Good morning, your honors. My name is Elliot Dissner, and I represent Valley Outdoor. This case concerns a, let's call it an error, to be generous, with a decision below based on the misreading of this court's decision in the Valley Regency and County Riverside case, 3377 Zerk. And what the court said, just to focus this, is I don't think... May I ask you a preliminary question? Sure. As I understand it, there was a requirement that before you started to excavate or put up a billboard, you're required to apply for a permit. Is that correct? No. Well, what are the requirements with regard to getting a permit? As a matter of law, the... No, what are they? The requirement? What are they, in fact, as a practical matter? Okay, sure. It is permissible to commence construction and then, according to the laws of Riverside, the city, to then apply for a permit thereafter. But that isn't my question. There's no... Are you telling us there's no requirement of the city of Richfield that before you start construction, you have to get a permit? There's a $1,000 penalty. There's a price paid for not doing that, but the Ninth Circuit has said that's fine. Is there anything... If I come in tomorrow and decide I want to put up a billboard and I look over what the regulations are, is there no regulation that will say to me, you must get a permit before you start construction? When the law that applies is found unconstitutional and there is no law that prohibits the billboard from being there, there may or may not be other requirements. Why don't you just answer Judge Friedman's question? There are requirements that require these billboard operators to go down and get a permit before they build. I don't... They seek structural requirements. They require them to get a basic permit. Not if they have the opportunity to do it afterward and pay the price. That's not the question. Does he have an opportunity to get one if he didn't do it? The question is, does the ordinance require them to get a permit before they commence construction? The ordinance, yes, is the answer to that question. Does the ordinance allow them to come in later and apply for a late permit? And the answer to that question is yes. And that's part of your attack here is on that whole late application process. Right. We have two chances. That's correct. That's right. But there is a requirement to get a permit before you build. And then, but if you don't, you're not out of the ballpark yet. Right. You can come in and you can apply for a late permit. And one of your complaints here is that this late permit business was used in a sort of a nefarious way or kind of a manipulative way. Yes. To deny you your chance to get a late permit. Under the original ordinance. Right. But in response to Judge Friedman's question, if you look at that ordinance, it clearly requires before you build the foundation or excavate to get a permit. My point is it requires it without a consequence. That's my point. See, because I have a follow-up question. If it requires it, my question to you is why didn't you people apply for a permit before you started construction? The decision was made based on the Desert Outdoor 1996 case of this court that if a billboard operator, in this case, has an actual and well-founded fear that the law will be enforced against them, and there would be fertility to apply because the ordinance flatly prohibits the sign, in order to challenge the constitutionality, that's the way we have to do it. We have to actually be a, quote, violation in order to challenge the statute. The Scuttlefield case is just the opposite. Is that your argument that there's no way you could have challenged the constitutionality of the ordinance if you had applied for a permit? Exactly. And it was denied? Exactly. And then you went to court. You couldn't raise the constitutionality of the ordinance? Exactly. Yes. I don't understand why you say you couldn't raise the constitutionality of the ordinance under which your permit was denied. Thank you, Your Honor. That's the Stubblefield Construction Company case versus San Bernardino. It says exactly that, that there's no right to – you have no standing, no stake to challenge the ordinance first and then build your signs later. You have to have a stake. You have to have a – Well, you apply for a permit, and it's denied, and you believe the ordinance is unconstitutional. I don't know why you couldn't at that point in 1983, actually, alleging your First Amendment rights had been violated. I wouldn't think so either, except that that's the Stubblefield case. I'll have to take a look at this. State of California – Your understanding of Stubblefield. 32 CALIF 4687. That's what the Stubblefield case says. We have no standing to apply first. This is constitutional issues now. Well, in a 1983 litigation, there's no requirement that you exhaust administrative remedies and whatnot. You just apply for your permit. It's denied. If you believe the statute's unconstitutional, you can file your case. In the billboard world, whatever the reason, the Stubblefield – You filed a 1983 case here challenging it on federal constitutional grounds. Yes. We're not talking about the state administrative process or anything of that nature. Nonetheless, that case, that decision that we decided to do was to take two shots. And the first one is – I would call it two parachutes. And the second one didn't deploy, and that is not our responsibility. We had a right under the Riverside Municipal Code to construct without a permit. And the code itself is very clear. It's not just a code about without permits. It's signs constructed without permits. And, moreover, there's not any evidence in the record that this did not apply to us. In fact, Mr. Wild in his letter said, we would be pleased to process your application. This is in March 2000, after the war broke out. Who are you applying for the late application? Late application. The late application says that when the work for which a permit is required by this title is started or proceeded, at least this was started when the first permit application was filed in January, the foundation was in. At that time, one would imagine that starting a sign requires you to pour the foundation, and that foundation was poured, and there was every reason to believe that one could have filed for a permit then. There may be consequences. There may be penalties. That's a right we had to do, an absolute right. We wouldn't have been here today if they had given us the permit. As I read the county Riverside case, Mr. Dissner, I think it applies here. But your lawsuit is a little – has some other features to it that weren't in the county Riverside case. That's correct. And that's, I think, really the heart of your – what's left of your case, as far as I'm concerned. And I think I'd like to talk to you about those. Sure. I guess there were other issues for just a moment, if you don't mind. One is this whole business about the late application process. Yes. And you make an argument that it was arbitrary. The way in which they invoked their denial of that late application was arbitrary and capricious. I had faith. Right. And the other one is that they – that in doing that, they denied you equal protection of the law. That is, they treated you differently than other late offending filers. I think that's a derivative part of this. I don't think we need to go that far, but I think that's correct. Isn't that right? Isn't that what's – isn't that – That's what we're saying, yes. Okay. And according to your offer of proof that you gave to Judge Tavrisian in the district court, you were prepared to call witnesses who would testify as to those various matters. Yes. Isn't that correct? Yes. In fact, Mr. Fisher gave five pages of – Okay. And what he said was that these issues were not fairly raised in the pretrial conference order. Yes. I think that's incorrect. Okay. Why? Where are the – where are these two issues encompassed within the pretrial conference order? The pretrial conference order, to be fair, is not a model of clarity. And naturally, it does present issues. But I've got solutions for those issues. Well, I'm interested in hearing your solutions. Well, I'm – okay. Paragraph 5-13. And we're talking about the pretrial conference order? Yes. Which is back in the third volume, about 700 and – What paragraph? 5-13. Page 712. The one that says, Valley made a deliberate decision to begin construction? There's no scienter requirement here as far as building signs protected by the Constitution. In fact, it wouldn't happen by accident, I don't think. But what it says next is, Valley contends it believed the city would not have granted them. There's no magic to the word futility. But Valley contends, and it does now, that it believes the city would not have granted them, is the defense we're asserting. Moreover, the questions raised by the city requires us to respond that way, or at least to give an explanation. 727 says that plaintiff admits it did not obtain building permits or allow inspections. This is a factual dispute. The city of Riverside did not issue building permits. Don't we get to say why? The issue of futility is a counterdefense, really. It's the third point along the way. We have – there's evidence in this pretrial conference order – I'm not saying that right. In the pretrial conference order, the issue of the permit not being granted properly has been reserved. The issue of futility in 5-13 has been reserved. The questions that are raised by the city provides an opportunity for us to respond that way. The issue – oh, moreover, one more thing, and forgive me for saying this, but the court itself – I'm talking about Judge Terizian – said in the trial record at 225-25 to 226, in response, he said, after the pretrial conference order was filed, with some understanding, presumably, what the case was about, the judge said the plaintiff's claim that applying for a permit would have been a futility and that they should be excused from doing so. That's what the court said. But, you know, the futility argument is a little bit different than as I understood the offer of proof that you gave. And the attack on the offer of proof was that, you know, there was this – the ordinance contemplates or allows for a late permit application. That's right. And you did that here. And the city came up with bogus reasons for rejecting it, and they did that the day after the new ordinance went into effect. And you argue that there is no – there are no standards. There's no – you know, it's just unbridled discretion for them to reject these late-filed applications on any – for any reason. Not quite. The court summarily decided that the amended ordinance did not apply to these five sites. That's at ER 181. I'm not talking – I'm talking about whatever ordinance was in play. It wasn't arbitrary. Whatever ordinance was in play, you're – and you can correct me if I'm not understanding your argument, but I understood the argument to be that when they rejected the late-filed application, they did it for an arbitrary, discretionally – just rampant discretion basis. They came up with bogus reasons. Yes. That's correct. To deny that application. That's right. And that's your – that's your – it's part of your constitutional challenge. And I don't know if it's an equal protection argument or a First Amendment argument or, you know, they're singling you out. And then the other part of the argument to judge – offer a proof to Judge Trevisan was that you would call witnesses who would testify that they had submitted late applications. They had been granted. They had been approved. And the only reason why the city denied it here was because they didn't like these billboard builders. Yes. Exactly. In fact, that's the whole point of that little chart is that the – the red is what was knocked out from the state court opinion. Those are the critical size, shape, distance from the freeway ones, the factors. And what was left are these – are these proximity to fire escapes. That's what's left in the code. So it's called safety issues. And that was a relatively – not relatively – extraordinarily routine matter. These are not near windows or fire escapes. It was a very easy matter to resolve the issue. And they instead said the color is wrong on a steel pipe, and therefore we want to have you – we're going to reject the application, but we welcome new applications. They were all over the idea of the right to file post-construction permit applications, but we're not about to grant them. And they moved into the amended ordinance and said that was the reason they weren't going to grant it. And the court has expressly, summarily ruled the amended ordinance doesn't apply. The very reason they used – and there's no appeal on that before this court now. So that's the law. The very reason they used ex post facto to deny these permits was a statute that the court said does not apply. Counsel, you've talked about the city of Riverside versus outdoor media case. Now, that's different from the case we just received, at least in our chambers. We didn't get it until yesterday. City of Riverside versus Valley Outdoor. Do you want to say something about that? We have not yet ruled on whether to take judicial notice, but do you want to say anything about it? Yes. The appellate court decided that what Judge Turizian had said was collateral estoppel. The state – sorry, the city got around to bringing an action to have the signs removed about four years after the case was filed, the federal case. At that time, preliminary injunctions were entered to a limited extent. We continued operating our signs sort of halfway. They then filed a cross appeal, and the court of appeal decided that what Judge Turizian had said was collateral estoppel and that the trial court, state trial court, had no right to exercise any discretion and ordered the signs to come down. At the end of the opinion, it said, and we provided the language to the court, that this court, the Ninth Circuit, makes a decision with respect to the district court opinion, in effect, to let it know. And our point is that if the decision came down favorably to us sometime in the distant future, the signs would be by virtue of that decision torn down. So what we asked for is – What is the status of those signs at this moment? Are they up still? with only old, extant commercial advertising, no new commercial advertising, and non-commercial advertising. And they're languishing there. Has your client been deriving income from them? I think 40 percent of what he once did, which means he's probably breaking even or losing money on them. But it's better than tearing him down. And this whole process really is about a trial. I mean, this judge made a summary judgment-type decision on the limiting motion and just deprived us of the chance to go to trial to try the issues. He had a much different kind of appeal if we were up here, if there was a record. But in this case, there's no record whatever that the post-construction permit was not appropriate. I looked very carefully in the record to opposition. I saw no evidence in opposition, merely argument. In exchange, we have a declaration from, I think, Mr. Newby. We have Mr. Wild saying we're pleased to process your application. We have page 662, a plan check correction saying apply for an application. All these pieces of paper, all this evidence says apply for the post-construction permit. Go ahead and apply. And all we know is that there's not one bit of evidence to the contrary, and we're now held with some kind of burden of proof to show the plain meaning of the statute doesn't apply. And one other point, counsel, before you. I noticed that there's a Paul Fisher listed as counsel. Yes. Are you saving time for him or? No, I'd like to save the time I've got left for rebuttal. For rebuttal, certainly.   Thank you very much. May it please the Court. Timothy Coates on behalf of the City of Riverside. Judge Trevesian found at the end of the day after this Court's decision in Valley Outdoor versus County of Riverside that it ended up being a simple case. It ended up being a simple case by and large because of the stipulated facts in the pretrial conference order and the narrowness of the issues in the pretrial conference order. And bear in mind this was a case where for a long time we were kind of hitting a moving target. Several motions dismissed, motion for summary judgment in opposition to each of those motions. Plaintiff's case kept changing. What finally happened with respect to the pretrial conference order, once those claims became fixed and once certain facts became stipulated, when the Valley Outdoor versus County of Riverside case came down, basically there was no alternative other than to grant judgment. The reason being that everyone agreed, including Valley, that there was a permitting requirement, a construction permitting, a building permitting requirement, that Valley had deliberately decided to build the signs without applying for it. And this is the most critical thing, that Valley made inspection impossible, made it impossible to comply with the substantive building requirements of the Riverside Municipal Code because once you pour concrete over the rebar or whatever, you cannot inspect the foundation. Was there any offer of proof to counter the offer, their offer of proof at the time you appeared before Judge Trevesian for trial to that effect? On the statute or? No, just what you just said. No, no, no, the stipulated fact. No, the stipulated fact was Valley admits that it made inspection impossible. I mean, that's 5-18, I believe it is. Valley's president knew generally what inspections entail and that Valley made such inspection impossible since the hole to be inspected has already closed because the concrete footing had already been poured. That is why it's a. Let me ask you this. Yeah.  No, because it's concrete foundation. These are footings that concrete, rebar, you pour concrete over it. You have to break up the concrete and destroy the foundation. That's. That's what this is. That's what this is. I mean. I mean, when they say they've made inspections impossible, made such inspection impossible, I think Judge Trevesian was allowed to take them at their word at that stipulated fact. I think they don't. They're running away from these stipulated facts now. You know, I think they got to trial. Suddenly the Valley Outdoor case comes down and they have to find a new theory. Well, their theories were in there. If you go back to this pretrial conference order, let's see here. It says 7-1 that for all the reasons stated in plaintiff's operative complaint and in the prior motions and determined by this court in the California Court of Appeal, the original ordinance and the amended ordinance are unconstitutional. Then they go through a whole series of allegations that for all the reasons certain plaintiff's operative complaint are unconstitutional. Goes on. The city has continued to act upon and to implement the unconstitutional provisions of the original ordinance and to enforce the amended ordinance by seeking the removal of plaintiff's signs. That in engaging in the acts here and above alleged, defendants have deprived plaintiffs of rights, privileges, and immunities secured by the Constitution of the United States, specifically the rights to freedom of speech and due process as secured by the First and Fourteenth Amendments of the United States Constitution. And if you go to the complaint, there are other allegations about the way in which you guys, the city denied these late filed applications. You know, you look at them and well, I don't know. I mean, you look at what the reasons the city gave and fill in the color of the steel pole. I mean, we have to look if they don't. They didn't give the address when the city had been out there a few days before and had seen the signs and inspected the signs. But bear in mind, I mean, bear in mind. I mean, they violated a whole slew of things that are required by the city of Riverside. I mean, we can't just ignore violations, that we cite all of them. I don't think we can be faulted for the fact that if they violate 20, we list all 20. But I think at the end of the day, as Judge Trevisan said, the one that they cannot get around, and it's the problem because of the Valley Outdoor County and Riverside case, is the building permit. But you can't build first and ask questions later. Now, you may be right. Well, that remains to be determined as a matter of law, does it not? If that's the case, why are there provisions in the ordinance which permits the entertainment and approval of late file permits? Because there could be circumstances where someone has not made inspection impossible. I mean, I think that's the difference between these cases. Is the making of inspection impossible in the ordinance? Well, inspection is building requirements. We talk about that in our brief, that we incorporate the building code. I gather since you didn't answer the question, the answer is no. No, no, there is. There are specific provisions. No. Well, there are several provisions. You have to apply for construction permits. There are substantive provisions of the Riverside Municipal Code that say what's required for inspection. We talk about that in our brief. In fact, we list the provisions of the Riverside Municipal Code that adopt the uniform building code. And they say you've got to have concrete. You have to inspect the concrete before it's poured. I mean, we do have that, yes. Let me ask you something else. Certainly. Suppose they had applied for a building permit before starting construction. What would you have been able to do that you cannot do now? We could inspect the foundations. I don't understand what you mean. You say inspect the foundations. Inspect the hole as it's dug before anything is put in it? This is, as I said in our brief, we talk about the uniform building code is adopted by the city of Riverside. Very specific construction standards when you're doing foundations and stuff. I mean, very specific. Rebar has to be a certain size. You go there before they pour the concrete, because once it's covered up, once the hole is filled up, you can't go back in there and do that. And one of the critical things I want to talk about on that. is looking beforehand to determine whether what they were proposing to do would be in compliance with the building code. You look to see is the rebar welded together correctly? Is it the thickness correct? I mean, is the right concrete? Are the foundation holes deep enough, for example? Exactly. Are they wide enough? Everything necessary to determine compliance with the building code. And you say that a number of those requirements cannot now be determined because the concrete is filled up the hole. That's right. And that is, I mean, I think that's why Valley, when they had other counsel, did stipulate to that fact. Because, I mean, it's beyond to see that once you pour the concrete over there, you cannot perform the inspection required by the code. And I want to note something about, you know, the offer of proof. Gee, the city grants these kind of things all the time. Judge Trevesian looked at the evidence, not just what they offered in the offer of proof, but on motion for new trial when they actually presented declarations. And when you look at the declarations, none of them involve foundations for structures, let alone structures the size of billboards. One of the guys is talking about grading permits. The other person, I think it's Mr. Stevens, talks about what other jurisdictions do. But, you know, that's not evidence that the city of Riverside or really any public entity lets you build a large structure and not inspect the foundation. No evidence of that. Not even offer of proof. I mean, the offer of proof was you can get grading permits. And, you know, maybe there are people who can put up a carport where the wiring is not right. You know, it's highly unusual, though, for a district court judge to. So this is at the time of trial. And he grants your motion in limine. And I guess they I guess that then the plaintiff says, well, I have no evidence that that kind of once you I have no evidence to present what it was. I mean, we didn't follow this Rule 50 motion. It was the court backed into it on the ground. They said, look, I've excluded all this evidence, the post construction evidence. Once you filled in the hole too late. I now the other facts of the pretrial conference order, and they start with the caveat. We can't take any further evidence. He's you know, I'm going to impanel a jury to. Isn't this tantamount to a summary, a grant of summary judgment? And isn't that the lens through which we look to test the validity of what Judge Gervasean. Well, it would be true under Rule 52. I mean, in terms of whether you meet the Rule 50 requirement, that's a general review of that. That's true. That's true. I mean, I think his deference to his runs of pretrial conference order is an abuse of discretion standard. But you're right on the substantive grant. I think it's a rule. It is the same legal standard. It would have been. I'm sorry. No, I was just going to say that if that's the case, then it seems to me that there was no showing by Judge Gervasean or anything like that. And I'm not sure that that would have been the case. I mean, I think the issue is that there was no showing by Judge Gervasean. And I think that's the only thing in the record which indicates that he was entertaining any challenge with respect to the issuance of the late filed applications. And there was he couldn't have ruled on that. But in which case that that's still remaining. It seems to me, is it not? No, because because based on the stipulation, again, that you can't get a you can't grant a late filed application if it's impossible to do the inspection. OK, but that hasn't been determined. Well, that I understand that's your position. But there's not much of a showing to that effect in the papers in this case. Well, two things. I think as Judge Gervasean points out, he took them at their word on the you know, they've made the inspection impossible. And with respect to whether the city can or does grant late filed permits, came on the offer of proof. He determined that was irrelevant. It was irrelevant given the stipulation that they could never never comply. And then when he heard the evidence, again, on motion for new trial, the evidence comes in. And he says, but that doesn't doesn't say that the city grants anything with respect to large structures and their foundations. He specifically talks about Mr. Newby's declaration. He talks about Mr. Stevens. You know, I was just going to get back to I was just going to say that maybe it is like a summary judgment ruling. But, you know, one thing, if he had allowed all the if he had if he had started the trial and allowed the plaintiffs to put their evidence on. And then said, well, I've heard all this evidence, got the findings in the pretrial conference order. You claim that this was arbitrary and capricious or that there was discrimination here. But when you look at the evidence, you made it impossible for them to inspect. And your comparison here to other late filed grantee permittees or whatever they want to call them just is no legitimate comparison. There is no way a reasonable jury could ever come back in your favor. Rule 58 judgment for the for the defendant. Yeah. But he didn't do that here. He didn't give him a chance to even put on any evidence. Well, the two things. I mean, one, because he ruled in the motion limited that evidence wouldn't come in to begin with. I mean, if he's correct that that evidence is irrelevant because of the stipulation that we were required to get a billing permit. I mean, I don't know that it's necessarily irrelevant. Well, not irrelevant based on what's in the in the stipulated in this pretrial conference order. If you give this pretrial conference order the kind of generous reading that you're supposed to give it under the under our case law, it's difficult to say that the evidence is irrelevant. Well, I think it becomes irrelevant in light of the stipulation. I think his point was it's irrelevant in light of the stipulated facts and in light of the Valley Outdoor case. Because once you have the admission, look, we deliberately didn't didn't apply for permits. Two, we then made inspection impossible. The inspection is required by the building code. Physically made it made it impossible. Under Valley Outdoor, regardless of other portions of the of the code or what have you, you're not going to be able to maintain these signs. You're not going to be able to maintain a constitutional claim. So I can't grant you relief. They're illegal once they are built. And then why is the other evidence about. Because of the rebar or because of what the signs where the signs are going to be located or what they're going to say. Because he found because the stipulation on the construction part that they filled in the hole and made the inspection impossible. He did it based on the building permit aspect of it. OK, but he did not make a determination as to whether or not the opportunity for a late file permit determination was there or by implication was denied as arbitrary and capricious. That was never done in this case. I think it's because it was irrelevant because he. Well, again, I'm just saying that I think that's and you see that because he does reference it in a new trial order when they come in on that, because he points out, look, you don't have any case law saying they're required to give you a late filed permit, particularly when they've admitted that they cannot comply with your code. I think it is an orthodox situation. I'll be the first to admit that. I think it's unorthodox where you have the stipulated facts that we have in this case on germane issues. And the fact that, like I said, just before trial, the Valley Outdoor case comes down and really changes the complexion. And I think he saw it as a very straightforward case, given the facts they stipulated to. And I think that's why this is different than the typical case. Oh, let's impound. Let's put up this evidence because such vision said, look, if I'm correct and excluding this evidence, if these are determinative facts, what is the jury going to hear? There's nothing to go to the jury. And Valley didn't object to that process, though it certainly objected to the substance of Judge Trevesian's ruling on that. One thing I want to speak to is their request for judicial notice. Don't object to it for purposes of the court looking at the court of appeal decision. I think I do take issue strongly with the fact that this court should stay the state proceedings. They are a long way from being finished. And the trial courts in the state and the court of appeal request for us. I think there is a request for us to stay. It's it's. There have been two previous requests for this court to stay the state proceeding or to modify the district court's injunction pending appeal because Judge Trevesian said we could go ahead and file the abatement action because he couldn't find any irreparable harm. This court also agreed by way of denying the original motion for emergency stay. I gather they're still. Of all the proceedings in the state appellate court, are they completed now? No. The time remains in which to petition for review to the California Supreme Court. So jurisdiction on that injunction has not returned to the superior court. That's still pending. That is still pending. Do you know if the city is going to petition for review? We won't. We won't. So we won't petition. But I suspect they will. But I don't know. But like I said, I'll acknowledge that procedurally this is a very different case. But I think what makes it different is it's very rare that you get those kind of factual stipulations in a pretrial conference order. Well, not really. But I think it's kind of unique. I've seen very few cases where you get all the way up to trial. You're there for trial on the day of trial. And then the judge grants essentially Rule 50A without there being any evidence other than what's in this. Because having excluded the other evidence. I think a few cases where there's a watershed split in a particular event, and I think that's what Judge Trevisan said here. In fact, as I recall, I was never even certain that a judge, at least in the federal system, could do that under Rule 50A. I know that in the state court system, you know, in a state trial in California, the plaintiff can get up and give an opening statement and boom. Well, I think Judge Trevisan. I mean, Judge Trevisan struggled what to do because he said, look, I've excluded all this evidence. Okay. Putting aside substantively what is correct and procedurally, I've excluded all this evidence. The other facts tell me they're stipulated and they don't go to the jury. You know, what am I going to do, impanel a jury and grant a Rule 50 motion? So, I mean, procedurally, I think he didn't have any alternative having done that other than doing that, because he believed the other evidence that he excluded would be irrelevant. And, again, I submit that what's unique here is the breadth of the factual stipulations here. I think they were stipulated to when the law may have been different and they weren't considering their positions, but I think they're accurate factually. You know, they had demanded a right to a jury trial, and, you know, there's a difference between 50A and 54. 50A and 50B, I think. No, no. Or 54. Oh, 54 bench trial. 54 bench trial. Yes. Yes. But, again, the posture of the case is what was he going to do, impanel a jury and not I mean, if you agree that he properly excluded the evidence, that the watershed event is once you stipulate that you can't get that you made it impossible to substantively comply with the Riverside provisions. If that's correct, then, you know, I'm not sure what he could do, go to trial and not present evidence to the jury. I mean, I think he if that is a correct decision, this is the correct way to go about it. Otherwise, it would really be an idle act. And what's different here is I think it's rare for someone to essentially stipulate themselves out of their case, but it is what happened. Well, I know that this was well, I don't know. I don't know. When was the county Riverside case handed down in relation to this pretrial conference order? I'd have to look on the pretrial conference order. I think it was. I have to look. I don't know. But of course, any further questions? No further questions. Thank you. Mr. Dissner, is it true that you stipulated away your case? And you will tell us why. We've been ready to talk about this. Naturally, this pretrial conference order is a mess. And but you kind of got to look for the strength in it. And I think it's there. First off, keep in mind, there's not one scintilla of evidence that says that you can't inspect a hole that's been filled in. So I call this I'm now calling this the filled-in hole case. The only so-called stipulation is 518, which says the following, and I think it's got to be read very carefully. Valley's president knew generally what inspections entail. And then he wanted to say, but that's not an admission of what Regency knew. The other plaintiff in the case, they don't have any testimony or anything what the other plaintiff knew. I mean, yeah, plaintiff. Also, our president of Valley is a specialist in leasing. He's a leasing guy. He's not an engineer. Regency has admitted nothing. There's no inspector, engineer, contractor, geologist evidence here. This is the comment of one essentially technically irrelevant person who says what he only knew generally. And that is the entire basis of this case. We now know it's the filled-in hole case, and that's the only evidence they've got. That, I submit, is not an admission that binds everybody here. It doesn't bind even Valley, much less Regency, which was a plaintiff at the time, whose position we now assume. And moreover, the evidence is powerful that there's ways of inspecting. In fact, if there's a trial here, we're going to put on the $20,000 we spent for the sonar review that we now know, the state court knows, that the search can be done. This happens all the time. If it's a house and there's a wall, they have to break the wall or drill a hole to see if the right wiring is in there. Post-construction inspection sometimes costs money. We pay. We admit it if we have to pay for them to do something. But core samples, drilling, sonar, digging around the hole, all these are available. All they've got – by the way, there's not one piece of evidence to the contrary. There's no declaration for nothing. They've got this admission that our leasing manager president, which is his strength, knew generally something, and all these other people or all these other individuals we can have come forward for us have not been pinned down. This guy maybe, but he's only one person in this whole team of people involved who know what went on or could testify to what went on. When we put that evidence in, not as – we only had a few days, but what we had, this newbie and also our clients, other experiences, that's not the trial. That's a quick stand and deliver. You have to do it right then. But that's in response to nothing. No rebuttal at all on that issue. And I would respectfully submit that if this paragraph is problematic, that is where the word misstep comes in. The law says a misstep – the Lindt case in this circuit says a misstep should not be outcome determinative. So, you know, I'm microanalyzing this thing. We could probably just call it a misstep and go from there. But either way, we don't think this ought to carry the day. There ought to be a trial here for all these issues to be resolved. We sought damages, and we ought to be able to cover them as well. Thank you. Thank you, counsel. The case just argued will be submitted for decision.
judges: Friedman, O'scannlain, Paez